OPINION
{¶ 1} On October 8, 2001, appellant, Richard Rye, was charged with operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1), driving while under a suspended license in violation of R.C. 4507.02 and open container in violation of R.C.4301.62. A jury trial commenced on February 12, 2002. The jury found appellant guilty as charged. By journal entry filed March 12, 2002, the trial court sentenced appellant to two hundred ten days in jail.
 {¶ 2} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 3} "The trial court erred by denying the appellant his rights under the sixth amendment to have effective assistance of Counsel."
 II {¶ 4} "The trial court erred by referring to untested liquid in an unproduced can as a can of Budweiser, Thereby Inappropriately drawing an inference that an alcoholic beverage was in the can."
 III {¶ 5} "The trial court erred by allowing a person to sit on the jury who was not on the list of available jurors."
 I {¶ 6} Appellant claims he was denied the effective assistance of trial counsel because his trial counsel failed to file a motion to suppress. We disagree.
 {¶ 7} The standard this issue must be measured against is set out in State v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus, certiorari denied (1990), 497 U.S. 1011. Appellant must establish the following:
 {¶ 8} "2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle [1976],48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; Strickland v.Washington [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)
 {¶ 9} "3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."
 {¶ 10} Appellant argues the arresting officer did not have specific articulable facts of criminal activity to stop appellant and without a legal stop, all of the evidence obtained would have been stricken as "fruits of the poisonous tree." See, Terry v. Ohio (1968),392 U.S. 1.
 {¶ 11} In order to analyze the facts sub judice, we are limited to the trial testimony. Admittedly, the facts might have developed differently during a suppression hearing.[1]
 {¶ 12} It is clear from the trial testimony the police went looking for a subject and his vehicle matching appellant's description and vehicle. T. at 66. The police spotted appellant in the Comfort Inn parking lot. T. at 67. However, it was appellant who initiated the encounter with the police:
 {¶ 13} "Q. Okay, where did you see the vehicle first?
 {¶ 14} "A. As soon as we was pulling in the Comfort Inn.
 {¶ 15} "Q. Okay, and what did you do as a result of that?
 {¶ 16} "A. We saw it coming toward us, myself and Patrolman Nedrow, we started to exit the car, we was going to see if we could contact the gentleman, see what the problem was.
 {¶ 17} "Q. Okay, and were you able to do that?
 {¶ 18} "A. Yes, we did.
 {¶ 19} "Q. If you recall did you waive him down, did you waive him down or anything?
 {¶ 20} "A. Well we kind of just stopped our car and he just pulled up right alongside us. We exited our car, began to talk to him.
 {¶ 21} "Q. All right, and you're talking about your car. What sort of vehicle were you operating?
 {¶ 22} "A. It's a marked police cruiser with oscillating lights on top." T. at 67-68.
 {¶ 23} Casual, consensual encounters with police are not prohibited by Terry, supra, and its progeny. We find this "stop" was not initiated by the police. See, Florida v. Royer (1983), 460 U.S. 491. After appellant initiated the encounter, the police became aware of his demeanor:
 {¶ 24} "Q. All right, and tell us what happened?
 {¶ 25} "A. We began to talk to him, explain why we were contacting him. His reply back, we noticed he had — there was a strong odor of alcoholic beverage there and his eyes were bloodshot and glassy. I asked him if he had a driver's license. I think he handed me a journeyman's card, couldn't find a license." T. at 68.
 {¶ 26} Given the facts sub judice, we cannot find any deficiency in trial counsel's performance or that a motion to suppress would have succeeded on the merits.
 {¶ 27} Assignment of Error I is denied.
 II {¶ 28} Appellant claims the trial court erred in permitting Patrolman Jason Peters to testify to observing an open can of beer, a "Budweiser." We disagree.
 {¶ 29} The admission or exclusion of evidence rests in the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
 {¶ 30} The complained of testimony was as follows:
 {¶ 31} "Q. Did you observe anything in the . . . (Inaudible)?
 {¶ 32} "A. When we started talking to him we noticed there was an open can of Bud, I think it was Budweiser, an open can of beer." T. at 82.
 {¶ 33} Defense counsel objected and the trial court struck the testimony "as to what was in the can" "because we don't have an analysis." T. at 82. Thereafter, the prosecutor asked Patrolman Peters what he observed and he stated a "Budweiser beer can." Id. Patrolman Peters testified he has seen such a can, tasted one, smelled one and what he found in the open container was "[a]n alcoholic beverage is what it was in my belief." T. at 82-83.
 {¶ 34} Appellant argues there was no evidence the liquid in the can was alcohol. We do not find the testimony to be prejudicial as it relates to the R.C. 4511.19 or R.C. 4507.02 charges.[2]
 {¶ 35} Upon review, we find the trial court did not err in permitting the testimony.
 {¶ 36} Assignment of Error II is denied.
 III {¶ 37} Appellant claims the trial court erred in permitting a summoned but unrecorded juror to sit on the panel. We disagree.
 {¶ 38} During the voir dire process, an unidentified speaker was called as a juror:
 {¶ 39} "THE COURT: And I'm trying to work my way down to the S's.
 {¶ 40} "UNIDENTIFIED SPEAKER: Just, just tell them, just tell them I wasn't on the list. (Inaudible).
 {¶ 41} "THE COURT: Okay, but he's received a summons in here?
 {¶ 42} "UNIDENTIFIED SPEAKER: Yeah." T. at 46.
 {¶ 43} The juror had been summoned, but had not completed a questionnaire. T. at 46. Both counsel were afforded the opportunity to question the juror. T. at 46-48. Defense counsel did not challenge the juror for cause, nor did he use his last peremptory challenge. T. at 48-49. No objection was raised to the seating of the juror.
 {¶ 44} An error not raised in the trial court must be plain error for an appellate court to reverse. State v. Long (1978), 53 Ohio St.2d 91; Crim.R. 52(B). In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. Long. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. at paragraph three of the syllabus.
 {¶ 45} Upon review, we do not find the juror was not a duly summoned juror or appellant was denied the opportunity to question or challenge the juror.
 {¶ 46} Assignment of Error III is denied.
 {¶ 47} The judgment of the New Philadelphia Municipal Court of Tuscarawas County, Ohio is hereby affirmed.
By Farmer, P.J., Edwards, J. and Boggins, J. concur.
Topic: Ineffective counsel; evidence issues; juror issue.
[1] This could be reviewed by the filing of a motion for postconviction relief wherein testimony could be developed de novo the record.
[2] This assignment of error does not challenge the weight of the evidence as to the conviction for R.C. 4301.62.